Jack H. RYAN and Emma Jean Ryan (Husband and Wife), Plaintiffs and Respondents,

v.

J. Elliot EARL, Defendant and Appellant.

No. 16843.

Supreme Court of Utah.

Sept. 26, 1980.

---

James C. Jenkins, of Malouf, Malouf & Jenkins, Logan, for defendant and appellant.

B. H. Harris, Logan, for plaintiffs and respondents.

STEWART, Justice:

Plaintiffs were granted specific performance of an oral contract for the sale of realty. Defendant's counterclaim for partition was dismissed, and he appeals.

Defendant and Anthon V. Haynie, Jr., were cotenant owners of the real property involved here, each having an undivided one–half interest. Plaintiffs, desiring to purchase the property, paid Haynie $27,500 for his interest in installments in September 1977 and January 1978, after having engaged in discussions with defendant concerning the sale of the property. Although the parties dispute the nature of their negotiations, the trial court found that defendant did agree to sell and plaintiffs to purchase defendant's interest in the subject property for $28,500. When plaintiffs tendered the purchase price and made demand for the deed, defendant refused to sign and deliver it, claiming that he had not agreed to sell the property but, on the contrary, wished to have the property appraised and partitioned.

On appeal defendant contends that the evidence did not support the trial court's finding that there was an oral contract for the sale of the realty or that there was sufficient performance on the part of plaintiffs exclusively referable to the alleged contract to exempt it from the effect of the statute of frauds, § 25–5–3, Utah Code Ann. (1953), as amended. In support of his argument, defendant points out that (1) no deed or contract of conveyance was executed; (2) none of the payment checks issued by plaintiff was negotiated; (3) defendant continued to pay taxes on the property; and (4) the acts of the parties with regard to the property were consistent with the relationship of cotenants.

In reviewing a case in equity, this Court will reject the findings of a trial court only if the evidence clearly preponderates against those findings or if there was a misapplication of the law. *Pagano v. Walker*, Utah, 539 P.2d 452 (1975); *First Security Bank of Utah v. Burgi*, 122 Utah 445, 251 P.2d 297 (1952). The evidentiary burden is upon plaintiff, in seeking specific performance of an oral contract to convey land, to establish the contract by clear, convincing, and definite evidence and to show that the acts of part performance done pursuant to the contract were also clear, definite and referable exclusively to the contract. *Holmgren Brothers, Inc. v. Ballard*, Utah, 534 P.2d 611 (1975). The record supports the conclusion that plaintiffs in this case met the burden.

In the course of negotiations between the parties, plaintiffs offered to purchase the property for $55,000 and issued a check for $5,000 to defendant. The check was never cashed; the conflicting explanations for that fact included defendant's desire to avoid accepting the money while divorce proceedings were pending.

When plaintiffs learned from defendant that Haynie owned a one–half interest in the property, they purchased Haynie's interest for $27,500 and received a deed to Haynie's share of the property. Plaintiff Jack Ryan then made a new offer to purchase defendant's interest for $28,750 and testified that he understood defendant to

accept the offer. Ryan thereupon gave defendant a check for $5,000, and on or about November 15, 1977, paid off defendant's outstanding loan on the property in the amount of $12,514.33. Defendant ceased making monthly mortgage payments. On December 10, 1977, Ryan delivered to defendant's place of business a check made out to defendant in the amount of $9,587.01 and also a paid bill for $151.09 for payment of back water taxes and some repair work done on defendant's forklift.

Plaintiffs entered into exclusive possession of the property on or about December 1, 1977. They removed defendant's possessions from a concrete building on the property and commenced to make valuable improvements costing $15,000 to $20,000 in addition to the expenditure of $80,000 for the construction of a new house on the property. Defendant acknowledged these improvements and did not assert any possessory or ownership rights in the property. Plaintiffs paid the property taxes due in the fall of 1978; a month later defendant paid taxes on the same property. In early 1979 plaintiffs tendered the remaining amount due of $1,247.64 to defendant and requested a deed, which defendant refused to deliver.

The evidence supports the finding that there was an oral contract for the sale of the property with the terms clear and definite as to the price, specific property involved, and date of possession.

Defendant has asserted that even if there was an oral contract between the parties for the sale of the real property, the statute of frauds prevents judicial enforcement of the contract duties, and plaintiffs' part performance is insufficient to remove the bar of that statute.

Section 25-5-8, Utah Code Ann. (1953), as amended, provides that a vendee's part performance may remove a contract from the bar of the statute of frauds:

Right to specific performance not affected.–Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof.

This Court dealt with the doctrine of part performance in *Holmgren Brothers, Inc. v. Ballard*, Utah, 534 P.2d 611, 613–14 (1975), and stated:

The doctrine of part performance, in the state of Utah, has not been reduced to a formula, as it has in some of our sister states. Thus, decisions of this court do not stay the hand of equity in the equitable situations created by oral contracts for the transfer of an interest in land, but the statute is preserved and remains to serve its purpose–the prevention of fraud and injustice.

The Court went on to list several criteria by which to test the sufficiency of the acts of part performance alleged to justify the enforcement of an oral contract for the sale of land:

(1) Any improvements made must be substantial, or valuable, or beneficial. (2) A valuable consideration is demanded by equity. (3) If there is possession, such possession must be actual, open, definite [and] not concurrent with the vendor, but it must be with the consent of the vendor. (4) Such acts as are relied on must be exclusively referable to the contract. [Footnotes omitted.]

The improvements in the present case clearly meet the first criterion. The record indicates expenditures of $15,000 to $20,000 in making improvements to the existing cinderblock building and to fences, ditches, etc., on the property. Plaintiffs also commenced the construction of a home for which they made expenditures of over $80,000. These improvements were unarguably substantial and far exceeded the rental value of the property, a circumstance that has been considered by this Court in determining the propriety of specific performance. *Price v. Lloyd*, 31 Utah 86, 86 P. 767 (1906). The improvements were not those that would be made by a tenant in the ordinary use of the premises, but were instead of a character permanently beneficial to the land.

As to the second and third requirements set out in *Holmgren*, the record shows that

a valuable consideration was paid for the property and that plaintiffs' possession of the property was open and known to defendant and not without his consent.

The final criterion in determining the sufficiency of part performance, referability of the improvements, consideration and possession to the contract, is fully met in this case. This Court stated in *Ravarino v. Price*, 123 Utah 559, 577, 260 P.2d 570, 579 (1953):

> [P]ossession by the plaintiff is regarded as an important fact, one which is generally directly referable to the contract, and when combined with permanent and valuable improvements which are representative of the existence of an oral contract, virtually every jurisdiction will grant specific performance.

The building of a residence on the property conveyed by the oral contract is exclusively referable to the contract for the conveyance of property. Cases cited at Annot., 33 A.L.R. 1489, 1518 (1924), indicate that equity will not permit a vendor to avoid a strict fulfillment of an agreement when a vendee has been admitted into possession of land under a parol contract of sale and has erected a dwelling house on the land in reliance on the due completion of the contract. See, e. g., *Mournin v. Trainor*, 63 Minn. 230, 65 N.W. 444 (1895).

Defendant argues further that since possession of land by a tenant in common inures to the benefit of all cotenants, possession under a parol contract of sale from one cotenant is not sufficient to make the improvements referable exclusively to the contract, but that such improvements are referable to the parties' status as tenants in common. Defendant cites authority regarding repairs and improvements that are consistent with a tenancy in common, such as those normally made for one's own convenience and satisfaction. *Heiselt v. Heiselt*, 10 Utah 2d 126, 349 P.2d 175 (1960).

The nature and extent of the improvements made in this case defeat defendant's reliance on the relationship of cotenancy. An early Wisconsin case dealt with this issue, and after noting that there was authority to the effect that there can be no valid parol contract for the sale of land among tenants in common where all are in possession, the court stated:

> If these cases mean that a tenant in common in possession, who purchases by parol of his co-tenant also in possession, cannot take the exclusive possession of the land from thenceforth, and on performance of the contract maintain an action for its specific performance, especially if in good faith he makes valuable improvements upon the land, we cannot follow them. The equities of a tenant in common so purchasing may be just as strong, his possession just as exclusive, as are the equities and possession of a purchaser not a tenant in common of the land he contracts to buy. If there is any solid reason why a court of equity should open its doors to one of these and close them against the other, we fail to perceive it. [*Littlefield v. Littlefield*, 51 Wis. 23, 31, 7 N.W. 773, 775 (1881).]

See also *Peck v. Williams*, 113 Ind. 256, 15 N.E. 270 (1888). We find this position to be sound.

We would point out that, additionally, the other acts of the parties are logically referable only to a sales agreement and not to a cotenancy. These include the payment of defendant's loan by plaintiffs and the delivery of checks in amounts representing the total value of the property and the unchallenged exclusion of defendant and his possessions from the property.

The record amply supports the trial court's findings that there was an oral contract for the sale of land between the parties to this action and that there was sufficient part performance to avoid the bar of the statute of frauds.

Affirmed. Costs to Respondents.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.